UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL MILLER and KRISTERFER PASSINO,

                              Plaintiffs,

              v.                                                        9:19-CV-0030 (LEK/ATB)


ANTHONY J. ANNUCCI, et al.,

                              Defendants.
_____


## MEMORANDUM DECISION AND ORDER

## I.      INTRODUCTION

        Pro se plaintiffs Daniel Miller and Kristerfer Passino commenced this action in New

York State Supreme Court, Oneida County, against twenty defendants all alleged to be

employees of the New York State Department of Corrections and Community Supervision

("DOCCS") or the Office of Mental Health ("OMH"). Plaintiffs assert claims pursuant to 42

U.S.C. § 1983, 42 U.S.C. § 1985, the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

("ADA"), and § 504 of the Rehabilitation Act ("RA") arising out of their confinement at Marcy

Correctional Facility ("Marcy C.F."). See Dkt. No. 2 ("Complaint"). On January 18, 2019,

Defendants removed this action from state court and paid the statutory filing fee. Dkt. No. 1

("Notice of Removal").

        On January 11, 2019, Defendants requested an initial screening of the Complaint

pursuant to 28 U.S.C. § 1915A.[1] Dkt. No. 5 ("Defendants' Request for Screening"). On February 4, 2019, the Court granted Defendants' motion and the Clerk forwarded the Complaint to the Court for review. Dkt. No. 9 ("February 4, 2019 Text Order"). Miller did not object to the initial screening, but presented procedural challenges to the removal.[2] Dkt. No. 7 ("Submission in Support") at 1. Miller moved for a preliminary injunction with a motion to seal selected exhibits submitted in support of the motion for injunctive relief. Dkt. No. 6 ("First PI Motion"); Dkt. Nos. 7, 12, 13, 16, and 20 ("Submissions in Support"); Dkt. Nos. 14 and 19 ("Submissions in Support with Motions to Seal"). Defendants oppose the motions. Dkt. Nos. 10 ("Opposition to First PI Motion"), 11 ("Defendants' Exhibit"), 17 ("Opposition to Motion to Seal"). On March 22, 2019, Miller filed a second motion for preliminary injunction, Dkt. No. 22 ("Second PI Motion"), which defendants also oppose. Dkt. No. 23 ("Opposition to Second PI Motion"). However, on May 6, 2019, Miller filed a motion seeking to withdraw all pending motions. Dkt. No. 24 ("Letter Motion to Withdraw").

## II.    REMOVAL

The Complaint contains claims for violations of Plaintiffs' First, Eighth, and Fourteenth Amendment rights, as well as ADA, RA, and state law claims, related to incidents primarily at Marcy C.F. from March 2016 through September 2018. See generally Compl. On October 18, 2018, Plaintiffs filed their Complaint in state court. Compl.

---

[1] Defendants also requested a review pursuant to 28 U.S.C. § 1915(e). Because Defendants have paid the filing the fee, a review pursuant to section 1915(e) is not warranted.

[2] Passino did not file a response to the removal or request for screening.

From December 17, 2018 until January 4, 2019, Plaintiffs served Defendants with summonses and the Complaint in accordance with a state court order allowing alternative service. Notice of Removal at 3; Dkt No. 1-2 ("Order Permitting Substitute Service").

On January 8, 2019, Defendants filed a notice of removal pursuant to 28 U.S.C. § 1441 premised on federal-question jurisdiction. Notice of Removal.

**A. Legal Standard**

§ 1441, which sets forth the jurisdictional basis for removal, states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." See also Lincoln Prop. Co. v. Roche, 546 U.S. 81, 83 (2005) (explaining that § 1441 "authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court").[3] However, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d

---

[3] Certain civil actions including suits against railroads or common carriers, civil actions arising under the workmen's compensation laws of a state, and any civil action arising under section 40302 of the Violence Against Women Act, may not be removed to any district court of the United States. See 28 U.S.C. § 1445. Plaintiffs do not claim that this case falls within any category of nonremovable actions.

Cir. 1994)).

28 U.S.C. § 1446, which sets forth the procedural requirements for removal to federal court, states:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

§ 1446(b)(1). The thirty-day window for removal contained in § 1446(b)(1), while not jurisdictional, is "rigorously enforce[d]" by courts absent a finding of waiver or estoppel. Somlyo v. J. Lu–Rob Enters., Inc., 932 F.2d 1043, 1046 (2d Cir. 1991), superseded on other grounds in Contino v. United States, 535 F.3d 124, 127 (2d Cir. 2008).

After an action is removed from state court to federal court, remand may be granted on one of two grounds: (1) a defect in removal procedure or (2) a lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ." Id.[4]

**B. Analysis**

Liberally construed, Miller objects to Defendants' removal of this action by asserting that

---

[4] Defendants filed their Notice of Removal on January 8, 2019. Dkt. No. 1. Miller objected to the removal on January 30, 2019, within the 30-day time limit for raising procedural defects. Dkt. No. 7.

the Notice of Petition and Petition for Removal were not served with a docket number or reference to an assigned judge. Dkt. Nos. 7, 14. Defendants have not responded to Miller's objection.

On the same day that the Notice of Removal was filed, Defendants provided Miller with a copy of the Notice. Notice of Removal. While Defendants did not serve a copy of the file-stamped Notice of Removal bearing the docket number and assigned judge, the failure to do so was not a violation of § 1446(d). <u>Park v. McGowan</u>, No. 11-CV-3454, 2011 WL 4963759, at *4 (E.D.N.Y. Oct. 19, 2011). On January 9, 2019, Plaintiffs were served with a Text Order, issued by The Honorable Andrew T. Baxter, U.S. Magistrate Judge, advising Plaintiffs that the action was removed. Dkt. No. 3. Miller does not allege that he did not receive the Text Order. Indeed, on January 25, 2019, Miller filed a letter motion addressed to Judge Baxter, with the docket number. Dkt. No. 6. The "pre-filing delivery of the Notice of Removal and subsequent confirmation" by the Court, one day later, satisfies the requirements of § 1446(d). <u>See</u> <u>Park</u>, 2011 WL 4963759, at *5.

Since this action was properly removed in accordance with §§ 1441(a) and 1446, the Court will review the Complaint pursuant to § 1915A.

## III.    SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Because Plaintiffs seek relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of § 1915A. Under § 1915A, a court must review any "complaint in a civil action in which a

prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." § 1915A(b); see also Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that § 1915A applies to all actions brought by prisoners against government officials even when he filing fee has been paid).

When reviewing a complaint, the Court also looks to Rule 8 of the Federal Rules of Civil Procedure, which provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims

against them" is subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009).

A pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. See, e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**B. Summary of the Complaint**[5]

The incidents that form the foundation for the Complaint occurred while Plaintiffs were confined at Marcy C.F. See generally Compl. Plaintiffs are DOCCS inmates convicted of sexual offenses. Id. at 8.

---

[5] The Complaint includes exhibits. See Compl. at 39–76. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). The Court may also consider matters of which judicial notice may be taken, such as public filings, judicial documents, and official court records associated with those proceedings. See Fed. R. of Evid. 201 and 1005; Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).

*1. Factual Allegations regarding Miller*

In December 2015, Miller, who is disabled and confined to a wheelchair, was transferred from Downstate Correctional Facility ("Downstate C.F.") to Marcy C.F., without an evaluation, to participate in the Prison-Based Sex Offender Treatment Program ("PBSOTP").[6] Compl. at 8.

In March 2016, Miller, Passino, and other inmates filed an action in the New York State Supreme Court, Oneida County against the Director of the Mental Hygiene Legal Services ("MHLS"), Ann Marie Sullivan, and DOCCS Commissioner Anthony Annucci.[7] Id. at 9, 11; Dkt. No. 14-7 at 1–13; Miller v. Creahan, No. CA2016-000711 (N.Y. Sup. Ct., Oneida Cty) ("Miller I"). In that suit, Plaintiffs claimed that they were abused and mistreated by DOCCS staff at Marcy C.F. and by OMH staff assigned to the PBSOTP. Compl. at 8. Plaintiffs sought a declaratory judgment compelling MHLS to provide an attorney to advocate for patients in the PBSOTP. Id. at 9. Plaintiffs served the complaint in April 2016. Id.

On April 20, 2016, defendant Nora L. Staring, Miller's primary clinician, attempted to persuade Miller to sign a proposed Behavior Contract ("BC") and Individual Service Plan ("ISP") that contained "false information." Compl. at 10–11. On April 28, 2016, Miller filed a complaint with the Department of Education and Office of Professional Ethics against Staring

---

[6] "The PBSOTP provides an intensive sex offender treatment program to inmates incarcerated with DOCCS who have been classified as high risk for committing a sexual offense upon release from prison. This program is operated by OMH clinical personnel within DOCCS facilities and is designed to address the multiple risk factors presented by this population." See https://omh.ny.gov/omhweb/forensic/bisot/ (last visited Apr. 18, 2019).

[7] The Director is not named as a defendant herein.

and defendant PBSOTP Unit Chief, Bud C. Ballinger, III. <u>Id.</u>

On April 29, 2016, Staring told Miller that she conspired with Ballinger and defendants Psychologist Christine A. Pallas and PBSOTP Assistant Unit Chief Aaron Shupp to retaliate against him for filing the civil action against OMH staff and to prevent him from filing additional actions. <u>Id</u>. at 11. On the same day, Staring, Ballinger, Pallas, and Shupp "attempt[ed] to intimidate" Miller to persuade him to sign a BC and ISP that limited his right to use the grievance system or commence civil actions, and also prevented Miller from seeking assistance with sweeping, mopping, bending, and lifting. <u>Id</u>. at 12. The BC and ISP also contained false inculpatory statements, allegedly by Miller, that related to violations of the PBSOTP. <u>Id.</u> Defendants also presented Miller with a document titled "Notice of Voluntary Dismissal" with the caption of <u>Miller I</u>. <u>Id</u>. Miller was warned that if he did not sign the documents, he could "be expelled from the PBSOTP" and referred for an Article 10 proceeding pursuant to the Mental Health Law ("MHL").[8] <u>Id</u>. On May 4, 2016, Ballinger and Pallas attempted, for a second time, to coerce Miller into signing the documents. <u>Id.</u> at 13.

On or about May 1, 2016, Miller observed defendant Erica Hughes, Passino's primary clinician/psychologist, performing oral sex on Passino in Building 26, Room 14. Compl. at 10, 18. At 12:30 PM, defendant LCSW Megan Thomas ("M. Thomas"), Hughes, Pallas, and Staring approached Miller in his housing unit and threatened him with an Article 10 evaluation if he "reveal[ed] anything" he witnessed. <u>Id</u>. at 19.

---

[8] MHL Article 10 pertains to "Sex Offenders Requiring Civil Commitment or Supervision." N.Y. MHL §10.01.

On May 5, 2016, Miller's cube was searched, unsuccessfully, for contraband by a security staff member and a sergeant not named as defendants. Id. at 14. Later the same day, at approximately 7:30 PM, an unidentified sergeant told Miller that OMH Commissioner Ann Marie Sullivan, OMH Director of Forensic Services Naomi Freeman, and OMH Director of Sex Offender Treatment Christopher Kunkle disclosed information to Ballinger and Pallas related to Miller's confinement at Mid Hudson Psychiatric Facility. Id. at 14-15. Specifically, Ballinger and Pallas were informed that Miller previously accused an employee of Mid Hudson Psychiatric Facility of assault and filed a civil action against the employee. Id. They were also informed that, because of the accusation, the employee was prosecuted, convicted, and fired. Id. at 15. The sergeant explained that the information was disclosed in an attempt to prevent Miller from prosecuting his pending litigation. Id.

On May 9, 2016, Miller filed a motion for a temporary restraining order in Miller I. Compl. at 15; Dkt. No. 14-7 at 2–13. Miller sought an order enjoining Sullivan, Ballinger, Pallas, and defendant Marcy C.F. Superintendent Justin Thomas from preventing him from litigating his cases, suspending or terminating Miller from the PBSOTP without justifiable cause, transferring Miller to another facility, and preventing further retaliation. Dkt. No. 14-7 at 2–13. Miller served copies of the motion upon J. Thomas, Sullivan, Kunkle, Ballinger, Pallas, Annucci, and the New York Attorney General. Compl. at 16.

On May 11, 2016, Pallas and Staring attempted to persuade Miller to sign the BC, ISP, and Notice of Dismissal by threatening to terminate him from the PBSOTP. Id. at 16. On the same day, Ballinger, Pallas, and Staring filed a false misbehavior report alleging that Miller

interfered with a meeting when he served "legal papers for an injunction" on Staring. Id. at 16–17. Sullivan, Freeman, Shupp, J. Thomas, and Kunkle directed them to file the report. Id. at 17–18.

On May 12, 2016, Sullivan, Freeman, Kunkle, Shupp, Ballinger, and J. Thomas participated in a video conference. Compl. at 17. The parties discussed transferring Miller out of the program and told Sergeant LaQuay[9] that Miller attempted to "post" Pallas' home address with intent to "cause her harm." Id.

On May 13, 2016, Miller received a termination letter from Ballinger. Id. at 18. The letter informed Miller that he was discharged because he served Staring with legal papers. Id. Miller was transferred to Franklin Correctional Facility ("Franklin C.F."). See Miller v. Annucci, et. al., No. 7:17-CV-4698 (S.D.N.Y. filed June 2017) ("Miller II"), Dkt. No. 86 at 30.

From May 2016 until January 2017, Miller sent letters to defendants Executive Director of Central New York Psychiatric Center ("CNYPC") Deborah McCullogh and CNYPC Investigator Jill Grant complaining of the "sexual exploits" of OMH staff including Pallas and Hughes. Compl. at 28; see Miller II at 31. McCulloch and Grant refused to investigate the allegations and found the complaints to be "unsubstantiated." Id.

On June 21, 2017, Miller filed an action in the United States District Court for the Southern District of New York, in which he asserted claims for constitutional violations during

---

[9] LaQuay is not a named defendant.

his confinement at Green Haven Correctional Facility ("Green Haven C.F.") and Franklin C.F.[10] Miller v. Annucci, et. al., No. 17-CV-4698 (S.D.N.Y. filed June 2017) ("Miller II"). Compl. at 22.

In August 2018, while Miller was confined at Groveland Correctional Facility, he requested and received approval for a hardship transfer to Woodbourne Correctional Facility ("Woodbourne C.F."). Compl. at 22; Dkt. No. 14-5 at 6–15. However, in September 2018, without explanation, Annucci, Sullivan, and Freeman, interfered with the transfer and redirected Miller to the PBSOTP at Marcy C.F. Id. Miller arrived at Marcy C.F. on September 19, 2018. Id. at 23.

On September 21, 2018, Miller wrote to Annucci, Sullivan, J. Thomas, Kunkle, Ballinger, defendant DOCCS Deputy Commissioner Jeff McKoy, and defendant Deputy Superintendent of Marcy C.F. Mark Kinderman claiming that he was innocent of the charged sex crimes and requested reclassification. Id. at 23. Defendants refused to reclassify Miller. Id. at 24.

On September 25, 2018, during his intake evaluation with Weir, Miller told Weir he feared for his safety due to the presence of certain staff members. Id. at 25–26. On September 27, 2018, during a group session with defendant Andrea Kiss, a psychologist, Miller questioned the efficacy of the PTSOTP. Id. at 26.

On September 28, 2018, defendants Weir, M. Thomas, and Kiss threatened Miller with further retaliation if he did not drop "all the complaints and lawsuits." Id. at 27–28.

---

[10] At the time Miller filed Miller II, he was confined at Green Haven C.F. See Miller II.

## 2. Factual Allegations regarding Passino

From April 2016 through December 2016, Hughes forced Passino "to perform sexual acts with her," including oral sex, by threatening to falsify MHL Article 10 records pertaining to civil commitment. Compl. at 18. As discussed above, Miller witnessed Hughes performing oral sex on Passino on or about May 1, 2016. Id.

On approximately May 5, 2016, Passino gave Hughes, at Hughes' direction, a copy of Passino's confidential family court documents that included social security numbers and dates of birth. Id. at 13. That same day, Ballinger, Hughes, Staring, Shupp, and Pallas disclosed these confidential documents to defendant Offender Rehabilitation Coordinator Robert Gage. Id. Gage then gave the documents to DOCCS security staff "for the purpose of searching plaintiff Miller's cube, the objective of which was for leverage to coerce plaintiffs Miller and Passino to withdraw from the previous civil action . . . ." Id. at 14. In May 2016, Passino executed an affidavit that was included as an exhibit in support of Miller's motion for a preliminary injunction in Miller I. Dkt. No. 14-7 at 21–27.

On "numerous occasions," from March 2017 until September 2017, defendant Julia Weir, a psychologist, "attempted to . . . compel[] [Passino] to engage in sexual acts" under threats of suspension and/or termination from the program. Compl. at 19–20. From September 2017 until January 2018, Weir filed false reports accusing Passino of inappropriate behavior with staff. Id. at 20.

On November 28, 2017, Passino received a memorandum from Ballinger informing him that he was suspended from the program for thirty days due to "lack of progress." Dkt. No. 14-7

13

at 29.

In January 2018, Passino was terminated from the PBSOTP and transferred to Gowanda Correctional Facility ("Gowanda C.F."). Compl. at 20. As a result, he was prevented from visiting his son for five months. Id.

In July 2018, Passino returned to Marcy C.F. Compl. at 20. Upon his arrival, he disclosed the prior sexual abuse by Hughes and attempted abuse by Weir to his primary clinician/psychologist, defendant Caitlyn Taylor. Id. Passino had not previously reported the abuse because he was threatened with Article 10 confinement and a loss of good time credits. Id. at 20–21.

On August 30, 2018, defendant Licensed Clinical Social Worker Jean Burdick issued a memorandum advising Passino that he was suspended from the PBSOTP "due to an inability to demonstrate treatment motivation and ongoing engagement in unhealthy behaviors that have been addressed in multiple individual meetings . . . ." Compl. at 21–22; Dkt. No. 14-7 at 30. Burdick and Taylor told Passino that they could "do anything we want, and we know how to cover it up." Id. at 21.

### 3. Causes of Action

Construing the Complaint liberally, Miller asserts (1) First Amendment retaliation claims; (2) Fourteenth Amendment due process claims; (3) conspiracy claims; (4) constitutional claims based upon the failure to investigate complaints; (5) ADA and RA claims; and (6) state law claims. Passino asserts: (1) First Amendment retaliation claims; (2) Eighth Amendment claims related to sexual abuse; (3) privacy claims; (4) conspiracy claims; (5) ADA and RA

claims; and (6) state law claims. Plaintiffs seek declaratory relief, injunctive relief, and monetary damages. Id. at 35–39.

## C. Nature of Action

Plaintiffs seek relief pursuant to § 1983, which establishes "a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting § 1983); "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

## IV.    ANALYSIS OF COMPLAINT

## A. Sovereign Immunity

The U.S. Constitution bars a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Hans v. Louisiana, 134 U.S. 1, 10–21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through § 1983, see Quern v. Jordan, 440 U.S. 332, 343–45 (1979), and that New York State has not waived its immunity from § 1983 claims. See generally Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38–40 (2d Cir. 1977); see also Dawkins v. State of New York, No. 93-CV-1298, 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official capacity "is no different from a

suit against the State itself" and is therefore also barred. <u>Will v. Mich. Dep't. of State Police</u>, 491 U.S. 58, 71 (1989).

Plaintiffs' claims for monetary damages pursuant to § 1983 against Defendants in their official capacities (<u>see</u> Compl. at 5–8) are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to § 1915A(b). <u>Severino v. Negron</u>, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

**B. First Amendment Retaliation**

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—meaning, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. <u>Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977); <u>See also</u> <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." <u>Dawes v. Walker</u>, 239 F.3d 489, 491 (2d Cir. 2001), <u>overruled on other grounds</u>, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) (citing <u>Flaherty</u>

v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

### 1. Protected Conduct

Construing the allegations in the light most favorable to the pro se Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that they engaged in the following protected conduct to satisfy the first element to a retaliation claim:

- Plaintiffs' commencement of Miller I in April 2016 and the filing and service of motion for temporary restraining order in May 2016;

- Miller's April 2016 complaint with the Department of Education and Office of Professional Ethics against Staring and Ballinger;

- Miller's letters to McCulloch and Grant in May 2016 complaining of the "sexual exploits" of OMH staff, including Pallas and Hughes;

- Miller's commencement of Miller II in June 2017;

- Passino's verbal complaints in July 2018 to Taylor about Hughes' sexual abuse and Weir's attempted sexual abuse.

It is well-settled that filing a grievance or a lawsuit is constitutionally protected conduct. Johnson v. Eggersdorf, 8 Fed. App'x 140, 144 (2d Cir. 2001); See Lipsey v. SATF Prisons AD-Seg Prop. Officers, No. 15-CV-00691, 2018 WL 1877006, at *6 (E.D. Cal. Apr. 19, 2018) (finding that the filing of a motion for injunctive relief is protected conduct); King v. McIntyre, No. 11-CV-1457, 2015 WL 1781256, at *13 (N.D.N.Y. Apr. 8, 2015) (finding that a written letter of complaint to a superior officer is "at least arguably protected conduct") (citation omitted).

The Court now turns to whether plaintiffs were subjected to adverse actions, and whether there is a causal connection suggesting retaliatory intent.

### 2. Adverse Action and Causal Connection

The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" Gill, 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself deterred from exercising his rights. Id.; see also Ford v. Palmer, 539 F. App'x 5, 7 (2d Cir. 2013) ("The Court must apply the "objective test [for First Amendment retaliation] [. . .] even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."). Conduct that is "de minimis" does not give rise to actionable retaliation. Dawes, 239 F.3d at 493 What is de minimis varies according to context. Id. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." Id. at 491 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386–87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." Id. at 493.

A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a

causal relationship," <u>Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.</u>, 252 F.3d 545, 554 (2d Cir. 2001), "the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months." <u>Ashok v. Barnhart</u>, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003).

<u>a. Miller</u>

*i. Threats and Intimidation*

"[S]ome verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action." <u>Mateo v. Fischer</u>, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010). Whether threats constitute adverse action depends on the specificity of the threat its context. <u>See</u> <u>Barrington v. New York</u>, 806 F.Supp.2d 730, 746 (S.D.N.Y. 2011) (holding that verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific). <u>Compare</u> <u>Hepworth v. Suffolk Cnty.</u>, No. 02-CV-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (numerous verbal threats that inmate "would receive another beating or be killed" was enough evidence that a "reasonable jury could find that the officers unconstitutionally retaliated against" inmate) <u>with</u> <u>Bartley v. Collins</u>, No. 05-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we are going to get you, you better drop the suit," do not rise to the level of adverse action).

Miller alleges that he was threatened and harassed as follows:

- On April 20, 2016, April 29, 2016 and May 4, 2016, Staring, Ballinger, Pallas, and Shupp "instructed" him to execute false and unfavorable behavior contracts, service plans, and a stipulation of discontinuance for <u>Miller I</u> "or be expelled from the PBSOTP and be referred for MHL Article 10 review for civil

commitment as a sex offender." Compl. at 10–13. Miller claims that defendants were motivated to retaliate because he filed <u>Miller I</u>. <u>Id.</u>

- On May 1, 2016, Hughes, M. Thomas, Pallas, and Staring approached him in housing unit J-2 and told him to "concentrate on his own problems and treatment needs," and directed him "not [to] reveal anything he thinks he saw between a patient and his clinician in a room he had no business being near anyway." <u>Id.</u> at 19. M. Thomas told Plaintiff that "papers for an Article 10 evaluation can be made very easily in this program." <u>Id.</u>

- On May 5, 2016, Sullivan, Freeman, and Kunkle disclosed information related to Miller's prior complaints and legal action involving an employee at Mid Hudson Psychiatric Facility to Ballinger and Pallas. <u>Id.</u> at 14–15. Construing the Complaint liberally, Miller alleges that the information was divulged to harass him and deter him from pursuing his legal actions.

- On September 24, 2018, during a meeting in Building 26, Weir, M. Thomas, and Kiss threatened Miller. <u>Id.</u> at 27–28. M. Thomas stated, "This is not going to be like last time Mr. Miller, you are not going to recruit others to commence lawsuits and file grievances against me." <u>Id.</u> at 27. Kiss stated, "You know, I can easily put in a report that accents are a trigger for you to sexually offend again. What do you think that will look like when the case review team gets your file?" <u>Id.</u> Weir stated, "[y]our friend Passino is coming back. I know you were both plaintiffs in the previous lawsuit. I also know you think you have knowledge of 'inappropriate behavior' between clinicians and other patients. If you go down that path, you are going to find yourself in either CNYPC or St. Lawrence." <u>Id.</u>

Considering Miller's history with defendants and the specificity and nature of the threats, the Court finds that Miller has sufficiently pled threats that would deter a person of ordinary

firmness from exercising his First Amendment rights, and thus constitute adverse actions.

Moreover, the short periods between the protected speech and the adverse actions satisfies the

causal connection element of a retaliation analysis. Thus, the Court finds that Miller has

sufficiently alleged a retaliation claim related to threats against Staring, Ballinger, Sullivan,

Kunkle, Pallas, Shupp, Freeman, Hughes, M. Thomas, Weir, and Kiss to require a response.

### ii. Cube Search

Miller claims that DOCCS staff searched his cube for contraband in retaliation for Miller

I. Compl. at 14–15. It is well settled that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v.

Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880,

885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between

the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008

WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d

Cir. 1986) (other citation omitted). Here, Miller has not pled facts suggesting that any named

defendant was responsible for, or participated in, the cell search. Moreover, the Supreme Court

has held that "inmates have no constitutional protection from cell searches, even those conducted

for retaliatory reasons." Hudson v. Palmer, 468 U.S. 517, 530 (1984). Accordingly, Miller's

retaliation claim related to the May 2016 cell search is dismissed without prejudice pursuant to

§ 1915A(b) for failure to state a claim upon which relief may be granted.

### iii. False Reports and 2016 Termination from PBSOTP

On May 11, 2016, Pallas and Staring were directed by Sullivan, Freeman, Kunkle,

Ballinger, Shupp, and J. Thomas to issue a false misbehavior report that accused Plaintiff of "serv[ing] Staring with legal papers for an injunction" and "interfer[ing] in OMG staff ability to have a meeting." Compl. at 16–18. On May 12, 2016, the same defendants falsely accused Miller of disclosing a staff member's personal information. Id. at 17. Both of these acts were in retaliation for Plaintiff's filing of Miller I. Compl. at 17–18. As a result, Miller was terminated from the PBSOTP. Id.

At this juncture, Miller has sufficiently alleged retaliation claims against Pallas, Staring, Ballinger, Sullivan, Freeman, Shupp, Kunkle, and J. Thomas related to the false reports and Miller's 2016 termination from the program to require a response.

*iv. Retaliatory Transfer*

 Miller claims that in September 2018, Annucci, Freeman, and Sullivan interfered with his scheduled transfer to Woodbourne C.F. and redirected him to Marcy C.F. in retaliation for filing Miller II. See Compl. at 22.

At this juncture, Miller has sufficiently alleged retaliation claims against Annucci, Freeman, and Sullivan to require a response.

b. Passino

*i. Threats by Hughes*

Passino claims that Hughes threatened him with "consequences" if he reported sexual abuse. Compl. at 19. Passino alleges that he was threatened with PBSOTP termination, the loss of good time credit, and Article 10 confinement if he did not "keep quiet." Id. at 20–21. Passino reported that he was "[p]etrified about those prospects" and "afraid to make any complaints, and

based on his low IQ, he was forced to remain quiet." Id. at 21.

Thus, the Court finds that Passino has sufficiently alleged retaliation claims against Hughes to require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

*ii. Disclosure of Court Documents*

Passino alleges that Bell, Hughes, Staring, Pallas, and Gage retaliated against him when they disclosed Passino's confidential court documents. See Compl. at 13. Even assuming Passino engaged in protected conduct with a temporal connection to the disclosure, the Complaint lacks facts suggesting that the disclosure of the court documents would deter a "similarly situated individual of ordinary firmness" from exercising his First Amendment rights. Passino admitted that he discussed his Family Court issues with Hughes, see Compl. at 13, and Passino has not pled that he suffered any actual injury as a result of the disclosure. Accordingly, Passino's retaliation claims based upon the disclosure are dismissed without prejudice for failure to state a claim.

*iii. False Reports by Weir and transfer to Gowanda C.F.*

Passino claims from September 2017 until January 2018, Weir filed false reports in retaliation for Miller I, which had been recently dismissed. See Compl. at 20. Specifically, Passino alleges that Weir accused him of "improper behavior in the housing unit, and improper language with staff, and other false reports." Id. Passino was "forced to sign a behavior contract" and then in January 2018, discharged from the PBSOTP and transferred to Gowanda C.F., which prevented him from visiting with his son. Id.

At this juncture, Passino has sufficiently alleged retaliation claims against Weir to require a response.

*v. August 2018 Suspension from PBSOTP*

Passino alleges that on August 30, 2018, Burdick suspended him from the PBSOTP because he reported the prior sexual abuse by Hughes. See Compl. at 21–22.

Passino has sufficiently alleged retaliation claims against Burdick to require a response.

**C. Eighth Amendment Sexual Abuse**

"Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Crawford v. Cuomo, 796 F.3d 252, 256–57 (2d Cir. 2015). However, "there has been no case" in the Second Circuit "in which a plaintiff ha[s] established an actionable [Eighth Amendment] claim of sexual harassment . . . without having physical contact with the alleged perpetrator, or without, at the very least, alleging egregious sexual conduct." Holland v. City of New York, 197 F.Supp.3d 529, 547 (S.D.N.Y. 2016); see also Smith v. Roberson, No. 15-CV-0930, 2016 WL 1056588, at *3 (N.D.N.Y. Mar. 16, 2016) (holding that inmate stated Eight Amendment claim against corrections officer who "chased her, exposed his genitalia to her and threatened her with sexual assault.").

Passino claims that for nine months, Hughes repeatedly forced him to engage in sexual activity, including oral sex. See Compl. at 18. These allegations state an Eighth Amendment claim against Hughes and require a response.

The Court reaches a different conclusion with respect to Weir. Passino does not allege that he had any physical contact with Weir, rather, he claims that she attempted to abuse him. See Compl. at 19–20. As presently pled, the Complaint does not include sufficient detail to suggest that Weir engaged in behavior that was so "severe or repetitive" to constitute "cruel and unusual punishment." Crawford, 796 F.3d at 256. Accordingly, Passino's Eighth Amendment claim against Weir is dismissed without prejudice pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Claims Related to Disclosure of Personal Information

Construed liberally, Passino asserts a claim against Ballinger, Shupp, Pallas, Staring, Hughes, and Gage for violations of his right to privacy based upon their disclosure of his confidential family court papers, which included social security numbers and dates of birth. See Compl. at 13–14. "A right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution." Roe v. Wade, 410 U.S. 113, 152 (1973). "Prison inmates do not shed all fundamental protections of the Constitution at the prison gates." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citing Turner v. Safely, 482 U.S. 78, 95 (1987)). Instead, prisoners maintain rights which are not inconsistent with their position as inmates, or with "legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U .S. 817, 822 (1974).

Under certain circumstances, the disclosure by prison officials of inherently confidential and sensitive information regarding an inmate can support a due process violation claim under the Fourteenth Amendment. See Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994) (recognizing right of privacy shielding information that a person is infected HIV because "there are few matters that are quite so personal as the status of one's health" and, in particular, "[a]n individual revealing that she is HIV seropositive potentially exposes herself not to understanding or compassion but to discrimination and intolerance.").

As presently plead, however, Passino's claim does not fit within the privacy interests given constitutional protection. "[T]he contention that disclosure of one's social security account number violates the right to privacy has been consistently rejected." Pennyfeather v. Tessler, 431 F.3d 54, 56 (2d Cir. 2005) (quoting McElrath v. Califano, 615 F.2d 434, 441 (7th Cir. 1980). Moreover, Passino has not alleged that he suffered any injury as a result of the disclosure of his confidential family information and thus fails to state a claim for relief. See Salvatierra v. Connolly, No. 09 CIV 3722, 2010 WL 5480756, at *22 (S.D.N.Y. Sept. 1, 2010), adopted, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011). Accordingly, Passino's claims related to his right to privacy are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim.[11]

_____

[11] To the extent that Plaintiff attempts to assert a constitutional claim based upon violations of the OMH Confidentiality Agreement and the Family Court Act, that claim is dismissed. § 1983 does not give prisoners the right to sue guards for violating prison regulations. See Hyman v. Holder, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim); Cusamano v. Sobek, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) ("A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."); see also Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the

**E. Fourteenth Amendment Due Process**

Miller claims that he was unlawfully compelled to participate in the PBSOTP in 2016 and 2018, in violation of his procedural and substantive due process rights. See Compl. at 23–25.

*1. Procedural Due Process*

To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004).

While there is a question in this Circuit as to whether an individual not convicted of an express sex offense has a liberty interest in being free from mandated sex offender counseling, Henderson v. Heffler, No. 07-CV-0487, 2010 WL 2854456, at *5 (W.D.N.Y. July 19, 2010), a valid conviction for a sex offense satisfies any due process rights the prisoner had in avoiding mandatory treatment. See Tinsley v. Goord, No. 05-CV-3921, 2006 WL 2707324, at *5 (S.D.N.Y. Sept. 20, 2006) (requirement that inmate participate in sex offender program "does not implicate a constitutionally protected liberty interest."); Rheaume v. Pallito, No. 11-CV-72, 2011 WL 6934821, at *4 (D. Vt. Nov. 28, 2011) ("courts have held that designating someone as a sex offender does not require a hearing where the designation is based upon a valid prior conviction"), report and recommendation adopted, No. 11-CV-72, 2011 WL 6936201 (D. Vt. Dec. 30, 2011).

---

Constitution and is not alone actionable under ' 1983 . . .").

Miller was convicted of a sex offense. Compl. at 6. Thus, he does not have a liberty

interest in being free from participation in a sex offender treatment program. Plaintiff's due

process claims related to the PBSOTP are dismissed without prejudice pursuant to 28 U.S.C.

§ 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Substantive Due Process

Miller alleges that his substantive due process rights were violated because defendants

failed to properly evaluate him prior to his admission to the PBSOTP or reclassify him based

upon newly discovered evidence. See Compl. at 24–25. "Substantive due process protects

individuals against government action that is arbitrary, conscience-shocking, or oppressive in a

constitutional sense . . . but not against government action that is 'incorrect or ill-advised.'"

Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations

omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate

that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience.'" Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d

415, 431 (2d Cir. 2009) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

"Very few conditions of prison life are 'shocking' enough to violate a prisoner's right to

substantive due process . . . the Supreme Court [has] provided only two examples: the transfer to

a mental hospital and the involuntary administration of psychotropic drugs." Samms v. Fischer,

No. 10-CV-349, 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) (citations omitted).

Miller's referral to the PBSOTP is not conscience-shocking or oppressive in the

constitutional sense. Miller's participation in that program was based in part on his conviction

for "sexually related offenses." See Compl. at 8. Accordingly, Miller's substantive due process

claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a

claim. See Blake v. Fischer, No. 09-CV-266, 2010 WL 2522198, at *13 (N.D.N.Y. Mar. 5, 2010), adopted, No. 9:09-CV-266, 2010 WL 2521978 (N.D.N.Y. June 15, 2010) (holding that "enrollment in the SOP was not arbitrary, conscience-shocking, or oppressive, but rather was rationally related to a legitimate penological purpose and determined to be neither unnecessary nor painful.").

**F. Conspiracy**

Plaintiffs bring claims that various defendants conspired to retaliate against them under Sections 1983 and 1985. See generally Compl. A conspiracy claim under § 1983 must allege that: (1) an agreement existed between two or more state actors to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002). A conspiracy claim under § 1985 has four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Robinson v. Allstate Ins. Co., 508 F. App'x 7, 9 (2d Cir. 2013) (quoting United Bhd. of Carpenters v. Scott, 463 U.S. 825, 828–29, (1983)). To maintain a § 1985 conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds." Webb v. Goord, 340 F.3d 105, 110–11 (2d Cir. 2003). A claim for conspiracy under Section 1985 "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Robinson, 508 F. App;x at 9 (quoting Britt v. Garcia, 457 F.3d 264, 270 n. 4 (2d Cir. 2006)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. Ciambriello, 292 F.3d at 325.

A plaintiff's §§ 1983 or 1985 conspiracy claim fails if he is unable to allege the underlying constitutional violation. Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009). Since "[n]ot every state law tort becomes an actionable constitutional tort under section 1983 because it was committed by a state actor . . . our initial inquiry is whether the alleged actions, if taken as true, deprived [plaintiff] of a constitutional right." Bisignano v. Harrison Cent. Sch. Dist., 113 F. Supp. 2d 591, 595–96 (S.D.N.Y. 2000) (citing Baker v. McCollan, 443 U.S. 137, 146 (1979) and Albright v. Oliver, 510 U.S. 266, 271 (1994)); see also Nasca v. Cnty. of Suffolk, No. 05-CV-1717, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Because the Court has found no constitutional violation exists, dismissal of the Section 1985 claim is warranted.") (collecting cases)).

### 1. Miller

#### a. April 29, 2016 and May 4, 2016 Conspiracy Claims

Miller alleges that Ballinger, Pallas, Staring, and Shupp conspired to retaliate against him when they attempted to coerce him to sign the false BC, ISP, and proposed stipulation discontinuing Miller I. While Miller's claim that Staring "admitted" there was a conspiracy, Compl. at 11, is in itself insufficient, the allegations that the four defendants worked together to coerce him to sign the documents suggest they may have been acting on an agreement to do so.

Thus, construing the pro se plaintiff's pleadings liberally, the Court finds that the conspiracy claims under § 1983 against Ballinger, Pallas, Staring, and Shupp survive sua sponte review and require a response. The conspiracy claims under Section 1985, however, are dismissed for failure to state a claim because Miller does not allege that the defendants were motivated by class-based animus against Miller. See Robinson, 508 F. App'x at 9.

### b. Conspiracy Claims Related to Cube Search

Miller claims that Hughes, Ballinger, Staring, Pallas, and Gage conspired to retaliate against Miller and initiated the cube search. See Compl. at 13–15. However, as more fully discussed in Part IV(B)(2)(a)(ii) supra, Miller has failed to state a retaliation claim against any defendant related to the cube search. Thus, Miller's conspiracy claims related to the cube search are dismissed for failure to state a claim. See Droz, 580 F.3d at 109 (holding that a plaintiff's § 1983 conspiracy claim fails if he is unable to allege the underlying § 1983 cause of action); Ellison, 2013 WL 5863545, at *3–4 (dismissing claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, because the plaintiff failed to adequately allege federal constitutional violations).

### c. Conspiracy Related to 2016 Discharge from PBSOTP

Miller claims that Ballinger, Pallas, Staring, Sullivan, Freeman, Kunkle, Shupp, and J. Thomas conspired to retaliate against him when they issued false reports resulting in his 2016 discharge from the PBSOTP. See Compl. at 16–18. Miller alleges that these defendants participated in a video conference on May 12, 2016 and agreed to initiate a retaliatory transfer out of the PBSOTP. See id. at 17. To that end, Defendants "made allegations to Sergeant LaQuay" that Miller was "attempting to post defendant Pallas' home address to cause her harm." See id. Thus, Pallas and Staring, at the direction of Sullivan, Freeman, Kunkle, Ballinger, Shupp, and J. Thomas, issued a false misbehavior report. See id.

Construing the pro se plaintiff's pleadings liberally, the conspiracy claims under Section 1983 against Ballinger, Pallas, Staring, Sullivan, Freeman, Kunkle, Shupp, and J. Thomas survive sua sponte review and require a response. The conspiracy claims under §1985 are dismissed because Miller does not allege that the defendants were motivated by class-based animus. See Robinson, 508 F. App'x at 9.

<u>d. Conspiracy Related to 2018 Transfer</u>

Miller alleges that Sullivan, Freeman, Annucci, Ballinger, Shupp, M. Thomas, Burdick, and Weir conspired to retaliate against him when they interfered with his transfer to Woodbourne C.F. <u>See</u> Compl. at 22–23. Miller does not assert any facts giving rise to a conspiracy, but instead makes conclusory statements that defendants conspired with each other. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants. "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be enough to raise a right to relief above the speculative level." <u>Dorsey v. Fisher</u>, No. 09-CV-1011, 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (citations omitted); <u>See</u> <u>Webb</u>, 340 F.3d at 110-11 (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds").

Accordingly, Miller's conspiracy claims related to the 2018 transfer is dismissed for failure to state a claim. <u>See</u> <u>Gallop v. Cheney</u>, 642 F.3d 364, 369 (2d Cir. 2011).

### 2. Passino

Passino alleges that Hughes, Ballinger, Staring, Pallas, and Gage conspired to retaliate against him when they disclosed his confidential Family Court papers. <u>See</u> Compl. at 13–14. As presently pled, Passino does not allege facts suggesting a conspiracy, but rather conclusory statements that these defendants conspired. Moreover, as more fully discussed above, Passino has failed to state a retaliation claim against defendants related to the disclosure of his confidential information. Accordingly, Passino's conspiracy claims related to his confidential court documents are dismissed without prejudice for failure to state a claim.

### G. Failure to Investigate

Miller asserts a separate constitutional claim against McCulloch and Grant for failing to

investigate his complaints. See Compl. at 34. "[C]ourts within the Second Circuit have determined that '[t]here is... no constitutional right to an investigation by government officials." Bernstein v. New York, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases). Accordingly, this claim is dismissed with prejudice pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

### H. ADA/RA[12]

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA, "protects a 'qualified individual with a disability' from exclusion of participation, denial of the benefits, or subjection to discrimination 'under any program or activity receiving Federal financial assistance,' because of the individual's disability." Harrington v. Vadlamudi, No. 13-CV-795, 2014 WL 4829483, at *3 (N.D.N.Y. Sept. 29, 2014) (citing 29 U.S.C. § 749(a)). The protections offered under Title II and the RA extend to inmates in state correctional facilities. Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 213 (1998). To successfully plead a Title II claim, "a prisoner must establish that: "(1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity." Allah v. Goord, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005) (citations omitted). § 504 of the RA "offer[s] essentially the same protections for people with disabilities."

---

[12] Plaintiffs do not specify what portions of the ADA are triggered. Reading the Complaint liberally, it appears that they bring this Complaint under Title II.

Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 113 (2d Cir. 2001). Under

Section 504, "an inmate must show that: (1) he is a 'qualified individual with a disability'; (2) he

is 'otherwise qualified' to participate in the offered activity or program or to enjoy the services or

benefits offered; (3) he is being excluded from participation or enjoyment solely by reason of his

disability; and (4) the entity denying the inmate participation or enjoyment receives federal

financial assistance." Allah, 405 F. Supp. 2d at 274–75.

     *1. Passino*

     Passino, who suffers from a learning disability, claims that Ballinger, Shupp, M. Thomas,

Burdick, Hughes, Weir, and Taylor refused to provide him with extended time to complete his

assignments in violation of the ADA/RA. See Compl. at 8, 9, 21, 32. Ballinger, Shupp, M.

Thomas, Burdick, Weir, and Taylor are sued in their individual and official capacity. See id. at

6–7. Hughes, however, is sued only in her individual capacity. See id. at 7. To the extent that

Plaintiff seeks monetary damages against these defendants in their individual capacities, these

claims are dismissed because Title II of the ADA and the RA do not provide for individual

capacity suits for monetary damages. See Garcia v. S.U.N.Y. Health Sciences Center of

Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Goord, 405 F. Supp. 2d at 279.

     Passino also fails to state a claim against Ballinger, Shupp, M. Thomas, Burdick, Weir,

and Taylor in their official capacities because he has not pled facts suggesting that he was denied

access to Marcy C.F.'s services, programs or activities due to a disability. See Carrasquillo v.

City of New York, 324 F. Supp. 2d 428, 443 (S.D.N.Y. 2004) ("Plaintiff's claim fails because it

does not allege that Plaintiff was *prevented* from participating in or benefiting from prison

programs and services because of his disability . . . When an ADA claim does not state that a

plaintiff was excluded from a prison service or program because of his disability, it must be

dismissed.") (emphasis in original).[13]

To the extent that the Complaint could be construed as asserting Title II claims for injunctive relief against defendants in their official capacities, those claims are also subject to dismissal. Passino is no longer incarcerated at Marcy C.F., see http://nysdoccslookup.doccs.ny.gov/ (last visited Apr. 29, 2019), and "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." Candelaria v. Greifinger, No. 96-CV-0017, 1998 WL 312375, at *2 (N.D.N.Y. June 8, 1998) (quoting Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir.1996).

Accordingly, Passino's ADA and RA claims are dismissed pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

   *2. Miller*

Miller asserts that Ballinger, Pallas, Shupp, and Staring violated provisions of the ADA and RA when they included a stipulation in his BC that prevented Miller from seeking assistance "sweeping, mopping, bending, and lifting." See Compl. at 12, 30–31. All claims against these defendants in their individual capacities are dismissed because, as stated above, neither Title II of the ADA nor § 504 of the RA permit monetary damages in individual capacity suits. Garcia, 280 F.3d at 107; Goord, 405 F. Supp. 2d at 279. The ADA and RA claims against the defendants in their official capacities are dismissed because Miller, like Passino, does not allege he was denied access to Marcy C.F.'s services, programs or activities due to a disability. Carrasquillo, 324 F. Supp. 2d at 443. Finally, any claim for injunctive relief is dismissed because Miller is no longer

---

[13] The ADA claims against Ballinger, Shupp, M. Thomas, Burdick, Weir, and Taylor in their official capacities are also subject to dismissal pursuant to the Eleventh Amendment because Passino does not allege that the violation was motivated by discriminatory animus or ill-will based on the Passino's disability. See Garcia, 280 F.3d at 112.

confined at Marcy C.F. See http://nysdoccslookup.doccs.ny.gov/ (last visited Apr. 29, 2019).

Candelaria, 1998 WL 312375 at *2. Thus, Miller's ADA and RA claims are dismissed without

prejudice pursuant to § 1915(A) for failure to state a claim upon which relief may be granted.

### I. State Law Claims

Plaintiffs assert claims for professional malpractice and gross negligence. See Compl. at

34. The Complaint is devoid of corresponding factual information. "[T]he tenet that a court must

accept as true all of the allegations contained in the complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by merely

conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Similarly, a pleading that only

"tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (internal

quotations and alterations omitted). Here, Plaintiff does not recite "elements" of a cause of action

but merely assigns legal labels to the causes of action. See Compl. at 18–19. Because of the

complete lack of factual allegations pertaining to these state law claims, the claims are dismissed

for failure to state a claim upon which relief may be granted.

### V. MOTION TO WITHDRAW

On May 7, 2019, Miller filed a motion to withdraw all pending motions, Letter Mot. to

Withdraw, to which Defendants did not respond, Docket. Thus, the Court grants Miller's motion

to withdraw his two pending motions for preliminary injunction.

Miller had also filed letter motions in support of his first motion for preliminary

injunction, and included exhibits that he requested be filed under seal. Dkt. Nos. 14 and 19

("Letter Motions in Support of First PI Motion"). The Court considers these motions withdrawn

as well. Given Miller's pro se status and the fact that the injunction request these exhibits

support—as well as the motions to which they were attached—has been withdrawn, the Court

will not order the exhibits unsealed.

## VII.    CONCLUSION

Accordingly, it is hereby

**ORDERED** that the following claims are **DISMISSED with prejudice**: (1) Section 1983 claims for monetary damages against defendants in their official capacities; and (2) claims against McCulloch and Grant for failing to investigate complaints; and it is further;

**ORDERED** that the following claims are **DISMISSED without prejudice**: (1) Miller's retaliation claim related to a cube search; (2) Passino's retaliation claims related to the disclosure of his court documents; (3) Passino's Eighth Amendment claims against Weir; (4) Passino's Fourteenth Amendment privacy claims; (5) Miller's due process claims; (6) Miller's 1985 conspiracy claim against Ballinger, Pallas, Staring, Sullivan, Freeman, Kunkle, Shupp, and J. Thomas related to his 2016 discharge from the PBSOTP; (7) Miller's conspiracy claims related to the cube search and the 2018 transfer; (8) Passino's conspiracy claims; (9) Miller and Passino's ADA and RA claims; and (10) Miller and Passino's state law claims;[14] and it is further

**ORDERED** that the following claims survive the Court's sua sponte review: (1) Miller's retaliation claims, related to threats, against Staring, Ballinger, Sullivan, Kunkle, Pallas, Shupp, Freeman, Hughes, M. Thomas, Weir, and Kiss; (2) Miller's retaliation claims, related to false reports and termination from the PBSOTP, against Pallas, Staring, Ballinger, Sullivan, Freeman,

---

[14] Should Plaintiffs seek to pursue one or more of the claims dismissed without prejudice by the Court herein, they must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiffs has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by Plaintiffs must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

Shupp, Kunkle, and J. Thomas; (3) Miller's retaliation claims, related to his 2018 transfer, against Annucci, Freeman, and Sullivan; (4) Passino's retaliation claim, related to threats, against Hughes; (5) Passino's retaliation claim, based upon false reports and his transfer to Gowanda C.F., against Weir; (6) Passino's retaliation claim, related to his 2018 suspension, against Burdick; (7) Passino's Eighth Amendment claim against Hughes; (8) Miller's conspiracy claims against Ballinger, Pallas, Staring, and Shupp related to threats/harassment on April 29, 2014 and May 4, 2014; and (9) Miller's § 1983 conspiracy claim, related to his 2016 discharge from the PBSOTP, against Ballinger, Pallas, Staring, Sullivan, Freeman, Kunkle, Shupp, and J. Thomas; it is further

**ORDERED** that McCoy, Kinderman, Gage, McCullogh, Grant, and Taylor are **DISMISSED** as defendants herein; and it is further

**ORDERED**, that a response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiffs must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiffs are also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in their address; their failure to do so will result in the dismissal of their action**; and it is further

**ORDERED**, that Miller's motion to withdraw all pending motions (Dkt. No. 24) is

**GRANTED**;

**ORDERED**, that Miller's motions for preliminary injunctive relief (Dkt. Nos. 6 and 22) and letter motions in support (Dkt. Nos. 14 and 19) are **WITHDRAWN**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      June 05, 2019
             Albany, New York

Lawrence E. Kahn
U.S. District Judge